UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| KIMBERLY A. SNOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-CV-434 JD |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Kimberly Snow appeals the denial of her claims for disability insurance benefits

and supplemental security income. For the following reasons, the Court will remand this matter

to the Commissioner for further proceedings.

## BACKGROUND

Ms. Snow filed applications for disability insurance benefits and supplemental security

income on August 1, 2014, alleging disability beginning July 11, 2014. Ms. Muzzey's

application was denied initially and on reconsideration. She did not receive an administrative

hearing until January 2017. Ultimately, the ALJ found that Ms. Snow had some severe

impairments but that she has not been disabled since July 11, 2014. *See* 20 C.F.R. §§ 404.1520,

416.920. The Appeals Council denied review of the ALJ's decision, making the ALJ's decision

the final determination of the Commissioner.

## STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as

the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707

(7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

## DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain

whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps

require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Id.*; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ

determines that the claimant's impairment or combination of impairments meets or equals an

impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R.

§§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the

claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then

used to determine whether the claimant can perform past work under step four and whether the

claimant can perform other work in society at step five. *See id.* The claimant has the burden of

proof in steps one through four, while the burden shifts to the Commissioner at step five to show

that there are a significant number of jobs in the national economy that the claimant is capable of

performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

     Ms. Snow now challenges the ALJ's opinion, arguing that he impermissibly interpreted

her recent medical records without subjecting them to expert review and further failed to assess

whether her severe migraines equaled any of the Listings. The Court agrees on both grounds and therefore will remand this matter to the Commissioner.[1]

## A.      Failure to Subject New Medical Records to Expert Review

Ms. Snow first argues that the ALJ erred by relying on the state agency physicians' outdated assessments and by "playing doctor" in interpreting approximately two years of medical history without subjecting those records to expert review. Agency physicians reviewed Ms. Snow's medical records at both the initial stage and on reconsideration, issuing their determinations on October 8 and October 31, 2014, respectively. (R. 102, 113, 127, 139). These reviewing physicians opined that Ms. Snow could perform light work with various environmental and exertional limitations. The ALJ assigned these opinions "significant weight." (R. 23).

During the two years between the reviewers' determinations and her hearing, however, Ms. Snow underwent additional medical treatment that comprises a significant portion of the record now before the Court. In particular, a February 2016 MRI revealed "massive full-thickness tears of the supraspinatus and infraspinatus tendons," spurring, and a degenerative tear to the labrum of Ms. Snow's right shoulder. (R. 768, 888, 1044, 1114-15). These conditions required Ms. Snow to undergo a full reverse total shoulder replacement because her treating doctors concluded that "[n]onsurgical measures such as injections, medications and or physical therapy may not offer significant relief to [Ms. Snow]." (R. 778, 1162-63). Dr. Jeffrey Hartzell performed this surgery on May 26, 2016. (R. 1165-68). Later, in August 2016, an X-ray of Ms.

---

[1] Ms. Snow also contests the ALJ's assignment of "little weight" to the opinion of one of her treating physicians, Dr. Ajit Pai. The Court need not grapple with Ms. Snow's arguments here given the outcome of this Order, although, she is of course free to pursue them on remand. The Court separately notes, however, that the record's copy of Dr. Pai's contested opinion is only legible in small part—the Court can barely make out the second of its two pages. (R. 734-35).

Snow's left knee revealed nonspecific effusion and mild-to-moderate patellofemoral degenerative change including undersurface osteophyte formation. (R. 1041). Based on these images, Ms. Snow's treating physician opined that "[s]he will eventually need a left knee replacement in the very near future." (R. 1050). The ALJ, however, never subjected these additional records to expert review.

"An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)). Indeed, the more recent medical records here "changed the picture so much" that the ALJ had an obligation to submit them for expert review. *Stage*, 812 F.at 1125 (remanding where ALJ evaluated updated medical records himself without submitting them to expert review; new MRI results indicated claimant's need for a hip replacement and revealed evidence of worsening of spinal degeneration). The records contain "significant, new, and potentially decisive findings" that could "reasonably change the reviewing physician[s'] opinion[s]," especially with regard to Ms. Snow's right shoulder and left knee limitations. *Id.*

Furthermore, the ALJ evaluated the new medical opinions, MRI, and X-ray himself to conclude that they did not fully explain Ms. Snow's alleged symptoms, but "ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). The ALJ "was not qualified or authorized" to determine that Ms. Snow's need for shoulder and knee replacements would not have affected her ability to perform the level of work he set forth in the RFC. *Stage*, 812 F.3d at 1125; *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (remanding where ALJ failed

to submit new MRI to medical scrutiny and instead played doctor by simply summarizing the test results in "medical mumbo jumbo"). Critically, as in *Goins*, the updated records here undermine the reasoning of the reviewing physicians, who disregarded Ms. Snow's allegations of worsening conditions based on a lack of supporting evidence in the file. 754 F.3d at 680. But files dated *after* the agency physicians had an opportunity to review Ms. Snow's medical history clearly show a worsening of her impairments.

Notably, the Commissioner makes no attempt to defend against Ms. Snow's arguments on this issue or otherwise distinguish the Seventh Circuit authority cited herein, which Ms. Snow also discusses in her brief. The ALJ's errors here require remand.

**B.      Failure to Evaluate Migraines at Step Three**

Next, Ms. Snow contends that the ALJ failed to assess whether her migraine headaches meet Listing 11.02. At step two, the ALJ determined that Ms. Snow suffers from a host of severe impairments, including migraines. (R. 15). Proceeding to step three, the ALJ then discussed whether Ms. Snow's severe impairments—specifically, her degenerative joint disease, peripheral neuropathy, connective tissue disease, respiratory disorder, and depression—meet or medically equal their corresponding Listings in the regulations. (R. 16-19). The ALJ, however, did not include any assessment of Ms. Snow's migraine headaches in his step three discussion.

An ALJ must provide sufficient analysis for the Listing that corresponds to each of a claimant's severe impairments. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (remanding where ALJ neither mentioned applicable listing nor evaluated whether claimant met that listing based on record evidence); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2002) (same). While no specific Listing for migraines exists, the Commissioner "'routinely considers [this] impairment[ ] under the criteria for the Listing [for epilepsy],' which is now 11.02."

*Horner v. Berryhill*, No. 17 C 7586, 2018 WL 3920660, at *2 n.1 (N.D. Ill. Aug. 16, 2018)

(quoting *Cooper v. Berryhill*, 244 F. Supp. 3d 824, 828 (S.D. Ind. 2017)); *see also Keller v.*

*Colvin*, No. 1:13-CV-00104, 2014 WL 948889, at *5 (S.D. Ind. Mar. 10, 2014). "A claimant

may therefore demonstrate equivalence to Listing [11.02] by showing that his migraines cause

functional impairments equivalent to those described in the Listing." *Cooper*, 244 F. Supp. 3d at

828-29.

Listing 11.02 (for epilepsy) can be met either where the claimant experiences generalized

tonic-clonic seizures at least once per month for three consecutive months, or where the claimant

experiences dyscognitive seizures at least once per week for three consecutive months, despite

adherence to prescribed treatment. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 (Listing 11.02(A)

and (B)).[2] The Commissioner's own guidance explains that, when applying the epilepsy Listings

to a claimant's migraine headaches, the claimant need only experience migraines at these

frequencies in order to equal the severity required for an award of benefits at step three. *See* SSA

Questions & Answers 09-036, at 3 (discussing Listing 11.02's predecessor, Listing 11.03); *see*

*also Kwitschau v. Colvin*, No. 11 C 6900, 2013 WL 6049072, at *3 ("In order to meet [Listing

11.03], Claimant must suffer from more than one medically severe migraine headache per week

despite at least three months of prescribed treatment.").

At the hearing, Ms. Snow testified that she experiences migraine headaches fifteen days

of every month, usually divided into three five-day episodes. (R. 52, 54). Medication does not

help her migraines, which are exacerbated by noise and cause her severe pain. (R. 53-54, 56,

388, 396). She can obtain relief only by trying to go to sleep. (R. 53-54). The record documents

---

[2] Listing 11.02 may also be met where the claimant experiences less frequent, but more severe seizures
that result in marked limitations in the claimant's ability to function. *See* 20 C.F.R. Part 404, Subpt. P,
App. 1 (Listing 11.02(C) and (D)).

Ms. Snow's history of diagnosed complex migraine headaches, which she has experienced continuously since August 2014 (at the latest) through the date of her hearing in January 2017. (R. 388, 752, 803-04, 957, 1091). And as the ALJ himself notes, Ms. Snow has also "obtained significant treatment from a pain specialist" for severe headaches. (R. 23). As part of this treatment, Ms. Snow received injections and nerve blocks for headaches consistently noted as severe, non-stop, and occurring over the course of years. All of this undermines the Commissioner's position that Ms. Snow has not demonstrated that she suffered from severe migraines for twelve continuous months. [DE 23 at 9][3]

The Commissioner's other shotgun-approach responses to this argument are unavailing. First, while she correctly notes that the claimant bears the burden of production at step three, *see Bowen v. Yuckert*, 482 U.S. 137 (1987), she incorrectly concludes that Ms. Snow has not carried this burden. As discussed above, Ms. Snow has produced evidence that she experiences migraines at the debilitating levels outlined in Listing 11.02. The Commissioner also argues that, despite the undeniable fact that the ALJ omitted reference to Listing 11.02, he still "explained in detail why Plaintiff did meet or equal *a Listing*." [DE 23 at 8 (emphasis added)] According to the Commissioner then, the ALJ's conclusion that Ms. Snow's respiratory disorder does not equal Listing 3.02, for example, indicates that her migraines (or any other impairment for that matter) likewise do not equal any other Listing. That is wholly illogical. And besides, the ALJ must consider the Listing applicable to *each* severe impairment. *See Ribaudo*, 458 F.3d at 583; *Scott*, 297 F.3d at 595-96. The ALJ made no such assessment of Ms. Snow's migraine headaches here, and thus the Commissioner's argument falls flat. Furthermore, the fact that neither the reviewing

---

[3] The Commissioner's apparent belief that Ms. Snow needs to have experienced severe migraines for twelve straight months comes from a requirement of the now-outdated Listing 11.03 that did not carry over to Listing 11.02. Listing 11.02 does not contain that durational requirement. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 (Listing 11.02).

examiners nor Ms. Snow's treating physician opined that she met a Listing does not relieve the ALJ of this duty, contrary to the Commissioner's position. Indeed, as discussed above, the reviewing physicians lacked more than two years of medical records that contained documentation of Ms. Snow's severe migraine headaches, and the fact that one particular treating physician never opined on any Listing is irrelevant. Similarly—and contrary to the Commissioner's position—whether Ms. Snow's counsel raised Listing 11.02 below does not excuse the ALJ's responsibility to consider whether that Listing is met, especially where, as here, the record contains evidence of frequent migraines, a metric the Listing itself employs to determine disability. *See Anderson v. Colvin*, No. 13-C-0788, 2014 WL 5430275, at *27 n.30 (E.D. Wis. Oct. 25, 2014) (holding that the fact that counsel did not argue relevant Listing to the ALJ at the hearing "did not relieve the ALJ of his duty to consider whether plaintiff's impairments met or equaled [that Listing][.]"); *Lane v. Astrue*, No. 1:10-CV-28, 2011 WL 3348095, at *9 (N.D. Ind. Aug. 3, 2011) (remanding where ALJ provided no more than a passing reference to and perfunctory analysis of applicable Listing despite evidence of impairment's severity, even though counsel provided no evidentiary explanation regarding said Listing to the ALJ).

Next, the Commissioner maintains that the ALJ cured any failure at step three because he "properly addressed Plaintiff's migraine headaches throughout his decision." [DE 23 at 8] Yes, the ALJ referred to Ms. Snow's migraines in forming the RFC, but nowhere in that discussion does he even "identify the requirements of the listing, let alone explain why the plaintiff does not meet them." *Horner*, 2018 WL 3920660, at *2 (remanding over Commissioner's argument that ALJ cured failure to adequately address plaintiff's migraines under Listing 11.02; ALJ made only a perfunctory analysis at step three and never discussed whether plaintiff met the Listing's

requirements elsewhere in his opinion). Finally, the Commissioner attempts to sidestep Ms.

Snow's argument as an "obscure" issue supported merely by guidance (SSA Questions &

Answers 09-036). But although the guidance cited by Ms. Snow may have no *legal* force, "that

does not mean that it does not have to be considered by the ALJ." *Keller*, 2014 WL 948889, at

*6 (citing *Wash. State Dept. of Social and Health Servs. v. Keffeler*, 537 U.S. 371, 385 (2003)

(finding that while SSA guidance materials "are not products of formal rulemaking, they

nevertheless warrant respect …."); *Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000) (citing to

SSA guidance to show that the Commissioner complied with his own procedures and finding that

"although the SSA has not implemented regulations concerning this statute, we nevertheless owe

SSA's interpretation of this statute respectful consideration.")). After all, "[t]he very essence of

judicial review is to determine whether an agency complies with its own regulations and

procedures so that there may be uniformity in decisions." *Moore v. Colvin*, No. 1:12-cv-00739,

2013 WL 4584618, at *5 (S.D. Ind. Aug. 28, 2013) (citing *Sierra Club v. Martin*, 168 F.3d 1, 4

(11th Cir. 1999) ("[C]ourts must overturn agency actions which do not scrupulously follow the

regulations and procedures promulgated by the agency itself.")).

Agency guidance dictates that a claimant's migraine headaches may match the severity of

a listed impairment if such migraines occur with the debilitating frequency of epileptic seizures

under Listing 11.02. The ALJ failed to discuss or even refer to Listing 11.02 in the face of record

evidence chronicling the significant impacts of Ms. Snow's migraine headaches. This, too,

requires remand. *See Ribaudo*, 458 F.3d at 583; *Scott*, 297 F.3d at 595-96 ("Without meaningful

analysis from the ALJ regarding this evidence, the parties have been left to dispute before this

court the significance of the different diagnoses in light of [the applicable Listing], and we are

left with a record that does not permit us to engage in the meaningful, albeit deferential, review that the statute mandates.").

**C.      Additional Consideration on Remand**

While not raised by the parties, the Court flags the ALJ's apparent decision to discredit Ms. Snow's symptomatic complaints of depression based on the fact that she "has never been hospitalized for mental health reasons." (R. 22). The ALJ tacked this to his credibility determination without providing any further explanation or analysis. The ALJ should approach the issue of treatment with caution when a claimant has a mental illness. *Barnes v. Colvin*, 80 F. Supp. 3d 881, 887 (N.D. Ill. 2015). As the Seventh Circuit has recognized, mental illness "may prevent the sufferer from taking her prescribed medicines or otherwise submitting to treatment." *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006). Moreover, "[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Thus, a claimant is not required to be hospitalized in order to demonstrate a severe mental impairment. *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 796 (E.D. Wis. 2004). On remand, the ALJ should more carefully consider and explain whether the lack of inpatient hospitalization impacts the weight Ms. Snow's symptomatic complaints should receive.

## CONCLUSION

The remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  April 26, 2019

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court
